SLT:SD
F.#2011R00397/OCDETF# NY-NYE-6706

M12-0257

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    - against -

FLORENCIO HONORATO-LOPEZ,
    also known as "Lencho"

                Defendant.

- - - - - - - - - - - - - - - - - -X

COMPLAINT AND AFFIDAVIT IN
SUPPORT OF ARREST WARRANTS

(T. 21, U.S.C., § 846)

EASTERN DISTRICT OF NEW YORK, SS:

       VICTORIA DELOLLO, being duly sworn, deposes and states that she is a Special Agent of the Drug Enforcement Administration ("DEA").

       Upon information and belief, in or about and between March 2010 and February 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant FLORENCIO HONORATO-LOPEZ, also known as "Lencho," together with others, did knowingly and intentionally conspire to distribute and possess with intent to distribute a controlled substance, which offense involved a substance containing five or more kilograms of cocaine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a).

       (Title 21, United States Code, Section 846)

       The source of your deponent's information and the grounds for her belief are as follows:

1. I am a Special Agent of the DEA, duly appointed according to law and acting as such. I have been a DEA Special Agent for approximately two years and am currently assigned to the New York Field Division, where I am tasked with investigating narcotics trafficking, money laundering and other offenses.

2. During my tenure with the DEA, I have participated in narcotics investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds and records of narcotics and money laundering transactions have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers and money launderers; (d) debriefed cooperating drug traffickers and money launderers; (e) monitored wiretapped conversations of drug traffickers and reviewed line sheets prepared by wiretap monitors; and (f) conducted surveillance of individuals engaged in drug trafficking and money laundering. Through my training, education and experience, I have become familiar with (a) the manner in which illegal drugs are imported and distributed; (b) the method of payment for such drugs; and (c) the efforts of persons involved in such activity to avoid detection by law enforcement.

3. The facts set forth in this Affidavit are based in part on information that I have learned from review of written documents prepared by, and conversations with, members of the DEA and other law enforcement agencies and from review of various

documents obtained by subpoena. In the portions of this Affidavit that describe judicially authorized intercepted wire communications, virtually all of the information, unless otherwise indicated, is based upon my review of draft line sheets created by the monitoring DEA agents and persons acting under their supervision who intercepted the telephone calls.[1] Furthermore, in the paragraphs below that describe surveillance within the United States, all surveillance was conducted by agents and other personnel assigned to the New York Division of the DEA, including myself. The observations of the other involved law enforcement agents have been related to me to supplement the activities that I personally observed.

4. Unless otherwise indicated, identification of individuals on the wire intercepted communications in this investigation were made through name and voice identifications by the law enforcement agents monitoring the wire interceptions. Agents initially identified each interceptee through the

---

[1] In this Affidavit, I have described portions of certain telephone conversations that were intercepted during the course of court-authorized wire surveillance. I have not, however, summarized every pertinent intercepted call, nor have I included every pertinent part of the call that I have summarized. Moreover, any transcripts of intercepted calls are preliminary and in draft form. As such, the summaries set forth in this affidavit are preliminary in nature. My opinions concerning the meaning of coded or veiled conversations are based on my training and expertise developed as a result of investigating the distribution of controlled substances. The participants in the intercepted calls relied on in this affidavit spoke primarily in Spanish. For purposes of preparing this affidavit, your deponent relied upon draft English translations of the line sheets prepared by DEA translators, none of whom are court-certified interpreters.

interceptee's identification of himself or herself by name during the course of the conversation in conjunction with available subscriber information. Thereafter, agents would identify the interceptee through either the use of his or her name or voice identification based upon comparisons with prior interceptions of that individual.

5. As set forth in the paragraphs below, there is probable cause to believe that the defendants are involved in the trafficking of narcotics, including cocaine. Because I submit this Affidavit for the limited purpose of establishing probable cause to arrest the defendants, I have not set forth all facts known to me about this investigation and case.

### Background of Investigation

6. Since approximately August 2010, the DEA has been investigating a drug trafficking organization ("DTO") based in Phoenix, Arizona. Separately charged individuals FRANCISCO AQUINO ("FRANCISCO") and FAUSTINO AQUINO ("FAUSTINO"), father and son respectively, operate the drug trafficking organization and coordinate shipments of cocaine from Phoenix, Arizona to New York. Specifically, FRANCISCO AQUINO ("FRANCISCO"), also known as "Tio," FAUSTINO AQUINO ("FAUSTINO"), also known as "Tino," RENE AQUINO ("RENE"), and ALEJANDRO AQUINO ("ALEJANDRO") and FLORENCIOHONORATO-LOPEZ, also known as "Lencho," arrange for cocaine purchased from sources of supply in Arizona, California and Mexico to be transported to New York concealed within

vehicles, either inside hidden compartments, or "traps," or secreted within other hollow parts of the vehicles. The vehicles are then either driven to New York by paid drivers, or hauled to New York on car carriers.

7. Based on the investigation, DEA agents learned that FLORENCIO HONORATO-LOPEZ, also known as "Lencho," resides primarily in Las Vegas, Nevada and helps FRANCISCO AQUINO arrange the shipments of cocaine in the vehicles.

8. As discussed below, my review of intercepted communications confirms that defendant FLORENCIO HONORATO-LOPEZ, also known as "Lencho," and other co-conspirators have arranged for shipments of cocaine to be sent from Arizona and California to New York.

### Court-Authorized Interceptions

9. Since January 31, 2012, DEA New York has received judicial authorization to intercept wire and electronic communications over various telephones used by FRANCISCO AQUINO, FAUSTINO AQUINO and other co-conspirators. Between January 2012 and March 2012, DEA agents intercepted communications between FRANCISCO AQUINO, also known as "Tio," FAUSTINO AQUINO, also known as "Tino," FLORENCIO HONORATO-LOPEZ, also known as "Lencho," and others regarding drug trafficking activity.

## Wire Interceptions

10. On February 16, 2012, at 9:40 p.m., a call was intercepted between FRANCISCO AQUINO and FLORENCIO HONORATO-LOPEZ.

| | |
|---|---|
| FRANCISCO: | WELL, I TOLD YOU HOW THINGS ARE. I CAME HERE FOR BUSINESS PURPOSE. |
| FLORENCIO: | OF COURSE. |
| FRANCISCO: | I TOLD MY "COMADRE" THAT ONE OF THE CAKES IS GOOD BUT THE OTHER ONE IS A LITTLE BIT LOW. ONE OF THEM IS VERY NICE BUT THE OTHER ONE IS LOW SO THAT'S WHAT I'M DOING RIGHT NOW. THE BOY LEFT TO OVER THERE IN THE MORNING ALREADY. BUT THE IMPORTANT THING IS TO MOVE, RIGHT? |
| FLORENCIO: | OF COURSE. |
| FRANCISCO: | I TOLD HIM, "TAKE A BREAD TO OVER THERE AND LET ME SEE IF I CAN EXCHANGE THIS ONE" BUT THAT ONE BELONGS TO TORTUGA. THE IMPORTANT THING IS TO GET...WELL, TO GRAB SOMETHING HERE. |
| FLORENCIO: | WELL, THAT'S THE PURPOSE, TO GRAB... |
| FRANCISCO: | YEAH BUT YOU KNOW THAT'S NOT EASY. YOU KNOW THAT. |
| FLORENCIO: | NO, TO GRAB A LINE IS NOT THE SAME THING. IT WAS DONE DOWN THERE ALREADY BUT NOT HERE. |

-------------------------------------------

| | |
|---|---|
| FLORENCIO: | SO TINO CAME IN THE "BASTON" |
| FRANCISCO: | WELL, HE BROUGHT "THE WHITE ONE" BUT YOU KNOW THAT I DON'T LIKE TO WASTE TIME. |
| FLORENCIO: | YEAH. |
| FRANCISCO: | AT LEAST ONE GALLON OF WATER. |

| | |
|---|---|
| FLORENCIO: | THAT'S GOOD. SO HOW ARE YOU GOING TO COME WITH THE OTHER ONE? |
| FRANCISCO: | I'LL TAKE THE BUS OR THAT THING...UH....THE "RAITERA." |

11. Based on my training, experience, knowledge of the investigation and previous interceptions, I believe that FRANCISCO and FLORENCIO discussed the quality of the cocaine that had been purchased, "That one of the cakes is good but the other one is a little bit low." FLORENCIO agreed with the plan and stated that it was important to "grab a line," referring to the cocaine. FRANCISCO also discussed with FLORENCIO that another member of the DTO, FAUSTINO AQUINO also known as "Tino," was bringing a vehicle which was going to be used to transport the kilogram of cocaine, "the white one".

12. Between February 14, 2012 and February 16, 2012, several calls were intercepted between FAUSTINO AQUINO and an unidentified female ("UF") who identified herself as being from "Motor Transports." Based upon public databases, Motor Transports is a nationwide truck dispatching company which works with independent truck drivers. During these conversations, FAUSTINO and the UF discussed arrangements for a driver to pick up a 1999 Honda Accord from FAUSTINO in Las Vegas, Nevada, where FRANCISCO AQUINO was located. FAUSTINO advised the UF that the driver should pick up a 1999 Honda Accord on February 16, 2012.

13. On February 15, 2012, at approximately 7:48 p.m., a call was intercepted between FAUSTINO AQUINO and the UF regarding

the driver's pick-up of the 1999 Honda Accord containing the cocaine. During the call, FAUSTINO instructed the UF to have the driver pick-up the cocaine-laden 1999 Honda Accord from a location in Las Vegas on February 16, 2012.

14. Based upon GPS information obtained pursuant to a court order for the driver's cellular telephone, the driver delivered the 1999 Honda Accord to the office of Motor Transports, which is located in New Jersey. DEA agents, posing as New Jersey State troopers, interviewed Aukse Glinskiene, (formerly identified as the UF) who is one of the owners of Motor Transports. Ms. Glinskiene stated that she was in possession of a white 1999 Honda Accord which she transported for FAUSTINO AQUINO who is known to her as Daniel. The DEA agents advised Ms. Glinskiene that they were investigating whether or not the Honda was stolen and she consented to their seizure of the vehicle. A subsequent search of the Honda on February 20, 2012, revealed that it contained approximately one kilogram of a substance which field tested positive for cocaine.

15. Subsequently, on February 20, 2012 at 7:54 p.m., a call was intercepted between FRANCISCO AQUINO and FAUSTINO AQUINO where they discussed the seizure of the vehicle by law enforcement. Soon after the February 20, 2012 seizure, agents intercepted numerous calls amongst members of the DTO concerning the transport of an additional kilogram of cocaine by vehicle from Las Vegas, Nevada to the New York area.

## Additional Wire Interceptions

16. For example, on March 1, 2012, at approximately 11:15 p.m., a call was intercepted between FRANCISCO and "Rosa", an individual believed to be FRANCISCO'S wife in Mexico. FRANCISCO discussed the preparation of the vehicle that was being used to transport the kilogram of cocaine. Specifically, FRANCISCO stated to Rosa that Lencho was working on the vehicle, "I told Lencho, Did you take it out from the sand? It came out really nice, after we washed it." In response, Rosa asked what color is the vehicle, and FRANCISCO stated it was white, "a Durango." At the end fo the call, FRANCISCO told Rosa that he and Lencho discussed placing the cocaine in the rims of the tires of the Durango, "to tie it around the rim."

17. In addition, on March 2, 2012, at approximately 10:21 p.m., During the call FRANCISCO told Rosa that he discussed transporting and packing the cocaine with "Lencho." FRANCISCO discussed placing the cocaine in the tires of the vehicle and how he had previously placed it in the rims, but FAUSTINO was unhappy with that arrangement so it was subsequently moved to inside the tires.

18. That same day, at approximately 5:01 p.m., a call was intercepted between FRANCISCO and an unidentified female ("UF"), an individual who is believed to be FRANCISCO'S wife in Newburgh, New York. During the call FRANCISCO told the UF that he had not answered her calls because he was with FLORENCIO working on installing the cocaine inside the tire, stating "It's because I was still here..fixing, you know what. I was installing a tire over here, with

Florencio." FRANCISCO continued that he believed that the car was seized last time, (referring to the February 20, 2012 seizure) because they took it to a mechanic who saw the cocaine, "I think that's why it failed that time. Because we took to a jerk and I think he saw it."

19. That same day at approximately 5:03 p.m., a call was intercepted between FRANCISCO and FAUSTINO. During the call, FRANCISCO told FAUSTINO that it did not take FLORENCIO long to put the cocaine in the tire, stating "Uh-huh. Well, I don't know…maybe God was…on that day…this time, Lencho just took less than 5 minutes to put it inside." FRANCISCO explained further that he and FLORENCIO were able to place the cocaine in the tires, stating "That's why! Let me explain to you. I just grabbed one edge. And him with the small one..of like 50 or 70 centimeters long…smaller than the yellow one" and "It went in little by little and he put it in like in five minutes."

20. On March 4, 2012, at approximately 4:33 p.m. a call was intercepted between FRANCISCO and FLORENCIO.

| | |
|---|---|
| FLORENCIO : | WHAT HAPPEN FLORENCIO? WHERE ARE YOU? |
| FRANCISCO: | NOTHING, JUST TALKING TO "EL MAESTRO", AND RENE. YOU KNOW. |
| FLORENCIO: | OH OKAY, DID YOU HAVE CONTACT WITH HIM |
| FRANCISCO: | UH-HUH. |
| FLORENCIO: | OH, I JUST WANTED TO ASK YOU IF I SHOULD TAKE THE WHITE ONE, BUT IF I TAKE THE WHITE ONE THEN.... |
| FRANCISCO: | NO, NO, THE THING IS THAT WITH THE WHITE ONE ....YOU KNOW WHAT HAS HAPPENED. RIGHT NOW THAT'S WHAT WE ARE DISCUSSING WITH "EL MAESTRO". THAT'S THE THING. YOU KNOW HOW IT IS, AT TIMES, NOT EVEN HE KNOWS WHAT'S |

|  |  |
|---|---|
|  | GOING ON. IT'S BETTER IF WE TALK ABOUT IT IN PERSON. |
| FLORENCIO: | SO I AM HEADING OVER THERE IN A FEW. BUT I AM NOT GOING TO BRING OVER THE TIRES, BECAUSE I AM GOING TO BRING THE BLUE ONE AND THEN WE ARE GOING TO RUN AN ERRAND. |
| FRANCISCO: | AH-HAH. |
| FLORENCIO: | LATER ON WE ARE GOING TO ADMINISTER THE "INJECTION" [PH] |
| FRANCISCO: | ALL RIGHT, FINE. |
| FLORENCIO: | ALL RIGHT. I SHOULD BE THERE IN ABOUT 15 MINUTES. |

21. Based on my training, experience, knowledge of the investigation and previous interceptions, I believe that FLORENCIO and FRANCISCO discussed filling the tires with cocaine and placing it on the vehicle for transport, "I am not going to bring over the tires", referring to the tires in which cocaine would be placed. FLORENCIO then went on to tell FRANCISCO that "Later on we are going to administer the 'injection'", in reference to actually placing the cocaine into the vehicle tires.

22. On March 6, 2012, at approximately 11:03 a.m., a call was intercepted between FRANCISCO and FAUSTINO. During the call, FAUSTINO asked FRANCISCO where the car is to be picked up, "So what is the address where you want me to send that over there?". FRANCISCO responded, "Lencho gave it to you right?" FRANCISCO further stated, "The one that Lencho gave you is good. That's why he gave you "La Hacienda."

23. On March 7, 2012, DEA agents observed a white 1999 Dodge

Durango at Hacienda Avenue and Jones Avenue in Las Vegas, Nevada. DEA agents confirmed that this same vehicle was placed on a car carrier and arrived to the New York area on March 13, 2012. The driver of the vehicle confirmed he had driven the car carrier with the Dodge Durango vehicle from Las Vegas, Nevada. The driver further stated in substance that he had been hired by "Tio" and "Tino" on approximately three occasions. Subsequently, DEA agents seized approximately one kilogram of cocaine from one of the tires on the Dodge Durango.

24. On March 13, 2012, at approximately 2:30 p.m., DEA agents arrested FLORENCIO HORANATO-LOPEZ, also known as "Lencho, along with FRANCISCO AQUINO in Las Vegas, Nevada.

Wherefore, your deponent respectfully requests that arrest warrants be issued for the defendant FLORENCIO HONORATO-LOPEZ, also known as "Lencho," so that they may be dealt with according to law.

_____
Victoria Delollo
Special Agent, DEA

_____
United States Magistrate Judge
Eastern District of New York